# Dewey, Appellant, *v.* Luzerne County.

*Public officers—Increase of salary—Chief deputy sheriff.*

The term "Public Officer" is not restricted to officers created by constitutional provision, but applies to officers, who exercise important public duties, for a stipulated compensation paid out of the public treasury and whose duties affect and are to be exercised for the benefit of the public.

Chief deputy sheriffs are public officers within the meaning of section 13, article III, of the Constitution of Pennsylvania which provides "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment." Such officers are not entitled to the benefit of the Act of June 8, 1915, P. L. 915, which fixes the salaries of chief deputy sheriffs of counties of more than 250,000 and less than 400,-000 at $2,500 per annum.

*Case stated—Public officers—Determination of status—Separate actions.*

On a case stated to determine the rights of a deputy sheriff to an increased salary, the rights of other deputies to other offices deriving their authority from different acts of assembly and having no relation to one another, cannot be decided in the same action. Such officers have no joint right nor have they any right in common, because some of them may be public officers within the meaning of the constitutional provision, while others may not be such officers. They cannot be permitted, for the purposes of testing their rights to increased salaries, to join in one action.

Argued March 1, 1920. Appeal, No. 164, March T., 1920, by plaintiff, from judgment of C. P. Luzerne County, Oct. T., 1918, No. 560, for defendant on case stated in suit of James A. Dewey v. Luzerne Co. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Case stated to determine if plaintiff was entitled to the increase of salary authorized by the Act of June 8, 1915, P. L. 915.

The facts are stated in the opinion of the Superior Court.

The court below directed judgment in favor of defendant in the following opinion:

This case involves the simple question of law, whether the chief deputy sheriff, deputy recorder, deputy treasurer, deputy controller, and chief clerk of county commissioners, who were appointed to those positions prior to June 8, 1915, and served until January 1, 1916, on a monthly salary of $165, fixed by the salary board, are entitled to receive from and after June 8, 1915, the increased salary of $2,500 per year, payable monthly, fixed by the act of that date, P. L. 915.

While the case stands in the name of the deputy sheriff alone as plaintiff, he holds for convenience in suit the claims of the others, which are all agreed to be, although this may be debatable, upon precisely the same legal footing, so that a decision will cover the aggregate claims of all.

If the controlling question above stated should be answered in the affirmative as to all the claims, judgment would properly be entered in favor of the plaintiff as agreed for $1,458.75, being the balance obtained by deducting salaries already paid at $165 per month, from the salaries fixed by the new act at $208.33 per month, from June 8, 1915, to January 1, 1916, subject to deduction pro tanto if the claims should not all be found entitled to recognition.

The said act is entitled, "An Act to fix the salaries of the deputies in the offices of clerk of the courts, county controller, recorder of deeds, county treasurer, chief deputy sheriff, and chief clerk for the county commissioners, in counties of this Commonwealth having over 250,000 population and less than 400,000 population"; and it provides "that from and after the passage of this act" in such counties, those salaries should be $2,500 each, per annum, payable in monthly installments.

The answer to the question really involves a consideration (1) whether the act is not wholly unconstitutional as special legislation, (2) whether it was intended by the legislature to cover the case of an incumbent already serving on a salary already fixed, (3) whether contractual implications would not forbid such a construction, (4) whether the act could cover such a case without infringing article III, section 13, of the State Constitution, that "no law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment."

Counsel in their submission of the case have ignored the first three considerations, and confined themselves entirely to the effect of said article III, section 13, agreeing that if the latter does not prevent, the county is liable, otherwise not liable; and while we take the case for decision upon the single ground thus defined, we do not wish to be understood as establishing any precedent against the other considerations if they should ever arise in any subsequent case.

Addressing ourselves, therefore, exclusively to that consideration, we conclude that article III, section 13, aforesaid, does prevent liability for the increase in salary, because these officials as we shall hereafter designate them, are "public officers" within the intendment of that provision.

While no appellate decision brought to our notice involves the precise question of a deputy's status in respect to this matter, we think that the governing principles are quite well defined and established.

It is clear to begin with and beyond discussion, that neither a sheriff, nor a recorder, nor a treasurer, nor a controller, nor a commissioner, could constitutionally receive such an increase, not only because they are public officers expressly created by the Constitution, but also because they exercise the grave public functions which are the distinctive mark of such officers whether constitutional or legislative.

Why, then, should their deputies, who exercise in their name the same functions, although not expressly created by the Constitution, stand upon a higher plane of privilege, exempt from the operation of this wise provision?

The question goes to the root of the matter.

Preliminary to an analysis of the decision, we will briefly state from the various acts of assembly in respect to each official, the manner and functions of his appointment.

The deputy sheriff is appointed under Act of May 24, 1887, P. L. 185, which in section 1 provides: "The sheriff shall appoint by deed duly recorded, a chief deputy, whose appointment shall be revocable at pleasure, and whenever the sheriff shall be temporarily unable by reason of sickness or any other sufficient cause to perform his duties in person, such chief deputy upon an order of the court of common pleas first made for that purpose shall have full power and authority during such incapacity of the sheriff to take charge of such office and perform all duties incumbent upon the sheriff, with like effect as if done by the sheriff in person."

The deputy recorder is appointed under the Act of March 1, 1852, P. L. 100, which in section 1 provides: "Every recorder of deeds may appoint and keep a deputy for whose conduct he and his sureties shall be accountable; and such deputy shall be capable in law to do whatever by law appertains to the office of recorder of deeds."

The deputy treasurer is not appointed under any specific statute which we have been able to find, but he has been tacitly assumed to stand upon the same footing in relation to the treasurer, as the deputy sheriff, deputy recorder and deputy controller stand in relation to their respective principals.

The deputy controller is appointed under Act of June 27, 1895, P. L. 403, which, in section 14, provides: "The controller shall appoint a deputy controller and such other clerks as may be necessary, whose salary shall be fixed by the commissioners and controller, as provided

by Act of 31st March, 1876. The deputy controller shall during the necessary or temporary absence of the controller, perform all his duties and also in case of a vacancy until a successor is qualified."

The chief clerk of the county commissioners is appointed under Act of April 15, 1834, P. L. 541, which, in section 20, provides: "It shall be the duty of commissioners of each county to appoint a suitable person as clerk, who shall keep the books and accounts of the board and record and file their proceedings and papers, attest all orders and warrants issued by them, and perform all acts pertaining to his office as clerk. He shall receive for his services such sum as the commissioners shall at their first meeting in each year agree upon"; and under Act of April 18, 1899, P. L. 56, which in section 1 provides: "The county commissioners shall constitute a board, a majority of whom shall have authority to appoint a competent person as clerk, who shall hold his office for the term of three years, and in case of vacancy by death, resignation, or removal for cause, his successor shall serve for the unexpired term and receive such salary as the commissioners shall determine; he shall perform the duties above mentioned; shall subscribe the constitutional oath, and give bond for the faithful performance of his duty."

It is to be observed that none of these officials except the chief clerk of the county commissioners, are appointed for a definite term, but this consideration is really immaterial as we will find upon examination of the cases, although some of them seem to put a different stress upon the matter.

By article VI, section 4, of the Constitution, "appointed officers, other than judges of the courts of record and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed"; and article III, section 13, does not specify an increase "during the term" of the officer, but "after his election or appointment"; so that they all

stand upon the same legal footing in that respect regardless of any statute defining the term.    (See Evans v. County, 54 Pa. Superior Ct. 44, infra.)

The question at issue is not concerned with the term, but only with the functions of the office.

It is also to be observed, as above intimated, that one of these officials, the deputy treasurer, unlike the others, is not appointed under any specific legislative authority.

Likewise it will be noted that the duties pertaining to the chief clerk of the county commissioners, are as the name implies, more distinctively clerical and less distinctively invested with the responsibility of discretion than the duties which pertain to the others, although he alone is appointed for a definite term, with the added distinction of making oath and giving bond.

We refer to these points of difference because they might easily involve differing conclusions, but since the learned counsel in the case have virtually agreed to disregard points of difference, we too will treat the deputy treasurer and the chief clerk as if they stood upon exactly the same plane with the deputy sheriff, deputy recorder, and deputy controller.

In our consideration of the subject we are not aided by Commonwealth v. McCombs, 56 Pa. 436, which merely decided, in 1867, on appeal from a taxation of costs, that an act creating the office of assistant district attorney, and transferring to him certain fees and duties of the district attorney, who complained, was not opposed to article VI, section 9, of the then existing Constitution, viz: "All officers for a term of years shall hold their offices for the terms respectively specified," etc., because the office of district attorney at that time was not a constitutional office but only a legislative one within the unrestricted power of the legislature to regulate and even destroy.

This was followed and applied to the office of burgess in Commonwealth v. Weir, 163 Pa. 284 (1895), but in Commonwealth v. Moore, 71 Pa. Superior Ct. 365

Opinion of Court below. [74 Pa. Superior Ct.

(1919), it was held inapplicable to the question of increasing the salary of a nonconstitutional office under article III, section 13, of the present Constitution; and the doctrine of legislative power to abolish such an office as burgess could not sustain any extension of term or a change in salary under said article III, section 13, on the definition of officer or public officer given in the later decisions. That definition was foreshadowed in Commonwealth v. Evans, 74 Pa. 124 (1873), in which it was held on assumpsit for defalcation, that a special agent appointed by the government under joint resolution of the general assembly in 1867, to collect suspended claims against the United States on certain compensation for an indefinite term, is a public officer and as such not privileged from arrest under the Act of 1842, saying: "All persons who by authority of law are intrusted with the receipt of public moneys, through whose hands money due to the public or belonging to it, passes on its way to the public treasury, must be so considered by whatever name or title they may be designated in the law authorizing their appointment, and whether the services be special or general, transient or permanent."

The last cited case was approved in Houseman v. Commonwealth, 100 Pa. 222 (1882), on mandamus, in which it was held that a collector of delinquent taxes appointed by the receiver of taxes in Philadelphia for the term of five years, was an officer removable by the receiver under article VI, section 4, aforesaid, the court saying: "He is a receiver of taxes, the moneys which come into his hands are public moneys, no element of mere private trust pertains to his functions, he is the officer of a great municipal government, etc. Such consideration sufficiently indicates his public character."

"The only distinction made in the section is between officers appointive and elective."

"There was no distinction between state, county, and municipal officers. There are petty officers in each class, so that no force can be given to the suggestion that mu-

nicipal officers were not intended to be included, because many of them are of a petty character."

In Reid v. Smoulter, 128 Pa. 324 (1889), on mandamus by assistant clerk of the orphans' court to compel payment of salary, it was held that said clerk is a constitutional officer and cannot be indirectly deprived of his office by an act refusing a salary, although enacted prior to his appointment; but this does not involve the application of article III, section 13.

In Commonwealth v. Black, 201 Pa. 433 (1902), on mandamus to compel recognition of relator as a policeman after his removal by the mayor of Philadelphia, we have the converse of the definition in the decision that a policeman is not an officer within the intent of article VI, section 4, aforesaid, for said the Supreme Court, "without going into the discussion at length, we are of opinion that a policeman is a subordinate ministerial agent or employee, like a fireman, a watchman or superintendent of public squares or other property, under the orders of a municipal department. He is not an independent municipal officer exercising grave public functions, in the language of Houseman v. Commonwealth, but at most a petty officer, not intended to be included in the constitutional provision, and therefore subject to removal by legislative regulation."

Coming somewhat closer to our present inquiry, we next find Richie v. Phila., 37 Pa. Superior Ct. 190 (1908), which directly involves article III, section 13, on case stated to determine plaintiff's right as real estate assessor to receive an increase of salary after his appointment by the board of revision for the term of five years; and in which is declared on principle that legislative officers with respect to said article III, section 13, may stand upon the same footing as constitutional officers, dependent chiefly upon the public character of their duties. Therein it was held (1) that the term "public officer" in the Constitution, is not restricted to offices established by the Constitution, as distinguished

from those created by the legislature; following Lancaster County v. Fulton, 128 Pa. 48 (County Solicitor); Brook v. Com., 86 Pa. 163 (City Councilman), and Houseman v. Com., 100 Pa. 222 (Collector of delinquent taxes). The power of the legislature to abolish an office not ordained by the Constitution, is unquestioned, and there is no restraint on such action, but as to both constitutional and legislative offices the command is that no law shall increase the salary after his election or appointment; (2) that a real estate assessor is a public officer, by distinction from subordinate positions as defined in Com. v. Black, Houseman v. Com., etc.; "Where, however, the officer exercises important public duties and has delegated to him some of the functions of government, and his office is for a fixed term, and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an officer may properly be called a public officer. The powers and duties attached to the position manifest its character. The functions of assessors are of prime importance. Their duties are designated by statute. They serve for a fixed period. They act under oath. The duties they perform are semi-judicial and their services are indispensable in the fiscal system of the State."

This decision was affirmed in 225 Pa. 511, where the Supreme Court, adopting in substance the argument of the Superior Court, said inter alia: "What we are again called upon to decide is whether the 13th section of the third article of the Constitution is broad enough and is so intended to extend to all public officers except those saved by the Constitution itself, upon whom grave and important duties are imposed for a fixed term, and who for the proper performance of the same have during the term of their election or appointment delegated to them some of the functions of government. It is settled that an office is a public one within the meaning of the Constitution if the holder of it exercises grave public func-

tions and is clothed at the time being with some of the powers of sovereignty."

In this Richie case we note the stress hereinbefore referred to, laid upon the element of a fixed term, which in the next cited case, Evans v. Luzerne County, 54 Pa. Superior Ct. 44 (1913), is eliminated as an essential factor. That case also was stated in assumpsit to determine plaintiff's right as assistant clerk of the orphans' court to receive under article III, section 13, legislative increase of salary after his appointment, which was not for a fixed term. The court below by opinion of Judge STRAUSS, 16 Luzerne Legal Register 92 (1912), recognizing the distinction between constitutional and legislative officers and the decision in Reid v. Smoulter, supra, that the assistant clerk of the orphans court was a constitutional officer, nevertheless, on the definition of a public officer in Richie v. Com., supra, stated as one of the grounds of his decision: "It is however, no longer open to question that the constitutional restriction may apply to legislative as well as to constitutional offices. Richie v. Phila., 225 Pa. 511, has definitely settled that the term 'public officers' applies to all officers who exercise important public duties and who are clothed at the time being with some of the powers of sovereignty, whether the offices affected are constitutional or legislative. It may therefore be assumed that the test to be applied is that prescribed by Richie v. Phila., and does not depend upon the accident whether the office has been created with or without direct constitutional warrant."

Then, after showing that the duties of such assistant clerk come within the defined category, the judge continues: "Moreover the prohibition contained in the Constitution was intended to be for the general welfare and is to be construed reasonably to protect the public against the evils that might result from permitting public officers unitedly or separately to influence the promotion of self-serving legislation. While the constitutional prohibition ought not to permit the casual em-

ployment of clerks or other persons for temporary serv-
ices in public offices, it is reasonable to enforce it against
all officials, whether superior or subordinate, whose pres-
ence and services are necessarily permanent for conduct-
ing public affairs." The court therefore disallowed the
claim for increase.

On affirmance of this decision in 54 Pa. Superior Ct.
44 (July, 1913), the Superior Court, citing the case
meanwhile decided by the Supreme Court, Seltzer v.
Fertig, 237 Pa. 514, said, inter alia, "The fact that no
fixed term is attached to the office does not militate
against the conclusion that it is a public office within the
meaning of section 13, article III, of the Constitution,
for it will be observed that the prohibition of that sec-
tion so far as relates to the increase or diminution of
salary, is not 'during the term of the officer,' but 'after
his election or appointment.' The framers of the Con-
stitution evidently had in mind public officers removable
'at the pleasure of the power by which they shall have
been appointed,' as well as those elected or appointed for
fixed terms."

In Seltzer v. Fertig, 237 Pa. 514 (October, 1912), on
petition to confirm new appointment on removal, the Su-
preme Court held that the assistant clerk of the orphans'
court is an officer removable by the register under article
VI, section 4, and not a mere petty officer in the lan-
guage of Com. v. Black, supra, not only on account of
express recognition by the Constitution, but also on ac-
count of the duties involved.

In Com. v. Moffitt, 238 Pa. 255 (January, 1913), on
mandamus against the controller to countersign war-
rant for increased salary of a poor director elected for
three years, the Supreme Court held that such an officer
is one within the intendment of article III, section 13,
and not entitled to the increase, saying: "It is settled by
many decisions of this court that the prohibition, etc.,
in section 13, article III, is not limited to constitutional
officers. Whether an officer is a 'public officer' within

the intendment of the constitutional prohibition depends upon the manner of his election, the duties imposed, and the powers conferred upon him. If he is chosen by the electorate for a definite and certain tenure in the manner provided by law to an office whose duties affect and are to be exercised for the benefit of the public for a stipulated compensation paid out of the public treasury, it is quite safe to say that the incumbent is a public officer within the meaning of the constitutional provision in question. He is selected by the people to perform certain imposed duties and exercise certain prescribed powers in the government of the State of the municipal division thereof for which he is chosen. His office is administered for the benefit of the public and to the extent of the powers conferred by law he exercises the functions of government. Tested by this definition which is sustained by the authorities, we think this poor director is a public officer within the meaning of the constitutional provision"; then reciting his duties.

It is plain that the court in saying, "If he is chosen by the electorate for a definite and certain tenure," etc., employed this language pro hac vice as to the particular office there involved, without intending to incorporate an essential element in the definition, which would be irreconcilable with the other decisions.

Finally, in Com. v. Moore, 71 Pa. Superior Ct. 365 (1919), on mandamus against the controller to sign warrant for increased salary of registration commissioners appointed by the Governor for term of four years, such an officer was held to be a public officer within the intendment of article III, section 13, the court saying: "If the appellants are public officers, their case is within the prohibition of the Constitution. We have no doubt that they are such officers. They are appointed by the Governor for a definite term; they are authorized to appoint registrars for the election districts of the cities in which they are appointed; they supervise the work of these registrars; they pass on the qualifications of electors;

they are required to keep a record of all their proceedings in permanent form; they make an annual report to the Governor and have power to administer oaths. Their duties relate therefore to the determination of the right of the electors of the city to vote and to the maintenance of the purity of elections. It can hardly be contended that such duties are not of the highest character and intimately related to the stability of our form of government."

We may also cite from other states, for whatever weight may properly belong to them, in respect to the status of a deputy sheriff as a public officer: Eastman v. Curtis, 4 Vt. 616; Towns v. Harris, 13 Texas 507; State v. Slagle, 115 Tenn. 336 (89 S. W. 326).

From the foregoing review of the decisions, we deduce the following conclusions respecting the applicability of article III, section 13, of the Constitution, to the case of these officials:

1. Every office created by the Constitution is subject thereto, even such a subordinate office as assistant clerk of the orphans' court;

2. And likewise subject thereto is every legislative office in which pertain such important public duties as pertain for example to the assistant clerk of the orphans' court, to a real estate assessor, to a poor director, and to a registration commissioner, whether the term be fixed or not;

3. The duties which pertain to a chief deputy sheriff and the other officials involved in this proceeding, stand upon no lower plain of public importance than those above enumerated, being the identical duties which pertain to the persons themselves whose offices are created by the Constitution;

4. Such officials do not belong in the category of "petty officers," etc., defined in Houseman v. Com., and Com. v. Black, etc., supra, nor are they mere servants, employees or clerks, but in part at least, and at times in

whole, are vested with the functions and responsibilities of their superior officers, and therefore,

5. Like their superiors, they should be subject to this provision of the Constitution, founded upon reasons which apply to the one as well as to the other.

Our attention has been drawn to an unreported decision in manuscript on June 29, 1916, by Judge EDWARDS of Lackawanna County, in the case of Ralph Collins v. Lackawanna County, No. 884, January Term, 1916, wherein that eminent jurist reached the directly opposite conclusion; no appeal being taken therefrom.

The chief points of his decision were, first, that the tenure of these deputies and of the clerk is uncertain and indefinite, they being removable under article VI, section 4, at pleasure, even of the clerk, notwithstanding his statutory term; second, that their salaries being fixed by the salary board under the Act of 1876 are subject to change at any time on a proper construction of said act, and "once it is conceded that the salaries could be changed from time to time by the salary board under the Act of 1876, and that the county commissioners could likewise increase or diminish the compensation paid to their chief clerk, the conclusion logically follows that such action would not be in violation of section 13, article III, of the Constitution"; third, that every case hereinbefore cited, in which a person has been held to be a public officer, de hors the Constitution, deals with the principal officer and not with his deputy or clerk, who is not embraced at all within the judicial definition.

But in criticism of these points, it is to be observed first, that tenure for a fixed term, as we have seen, is immaterial; second, that in respect to an increase by the salary board under Act of 1876, (1) there is involved a preëxisting and not a subsequently enacted law, (2) that the comparison really begs the question because if the deputy is a public officer within the intendment of the Constitution, the latter would prevent an increase, even by the salary board, under the preëxisting law; (3) that

an assistant clerk of the orphans' court can hardly be considered a principal officer, and yet, independent of constitutional recognition was held in Evans v. Luzerne County, supra, to come within the judicial definition of a public officer.

It is hard indeed to understand why the mere provision in the Constitution (article V, section 22) that "in any county in which a separate orphans' court shall be established, the register of wills shall be clerk of such court, and subject to its directions in all matters pertaining to his office; he may appoint assistant clerks but only with the consent and approval of said court," should put an assistant clerk of the orphans' court on a different plane from these officials, and once conceding or deciding that the category of such assistant clerk is determined on principle independent of the Constitution, it is hard to escape the conclusion that these officials are embraced in the same category. They hold high public position, with official designation, performing necessary and responsible public duties, and receiving public pay.

We are well aware that on a constitutional question the benefit of a doubt (even if not strictly reasonable) belongs to the Legislative Act, and that the very length and labor of this opinion instead of demonstrating unconstitutionality merely indicates debatability which of itself leads to the opposite conclusion, but our mind is clear that the allowance of increase to any of these officials would evade the plain language and equally plain intention of the fundamental law.

Consequently on the case stated, judgment is directed in favor of the defendant.

*Error assigned* was in entering judgment for defendant.

*M. J. Muhall*, for appellant.—A chief deputy sheriff is not such a public officer as is contemplated by section

13, article III, of the Constitution: Com. v. Moore, 71 Pa. Superior Ct. 365; Com. v. Moffitt, 238 Pa. 255; Richie v. Phila., 255 Pa. 511; Houseman v. Com., 100 Pa. 222; Com. v. Evans, 74 Pa. 124; Reid v. Smoulter, 128 Pa. 324; Evans v. Luzerne Co., 54 Pa. Superior Ct. 54.

*James M. Stack,* for appellee, cited: Richie v. Phila., 225 Pa. 511; Com. v. Moffitt, 238 Pa. 255, 13 Cyc. 1034.

OPINION BY PORTER, J., July 14, 1920:

The appellant was chief deputy sheriff of Luzerne County, appointed prior to June 8, 1915, and continued to serve as such until the first Monday of January, 1916. The salary of the chief deputy sheriff at the time appellant was appointed was $165 per month, and he was paid salary at that rate during his entire period of service. The Act of June 8, 1915, P. L. 915, fixed the salaries of chief deputy sheriffs, in counties of more than two hundred and fifty thousand and less than four hundred thousand, at $2,500 per annum, payable in monthly installments. The appellant contends that he is entitled to be paid salary, during the period of his service subsequent to June 8, 1915, at the rate provided for by the statute, and brings this action to recover the difference between that rate and the rate at which he has been paid. The county authorities declined to pay the advance of salary, upon the ground that the appellant was a public officer who had been appointed and was serving at a fixed salary at the time the statute was enacted and that the appellant could derive no benefit from the increase of salary thereby provided because of article III, section 13, of the State Constitution, which provides that: "No law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment." The learned president judge of the court below, in an opinion which will appear in the report of this case, held that the appellant was a public officer, within the meaning of the constitutional

provision, and was, therefore, not entitled to recover. The opinion of the learned president judge fully reviews all the authorities bearing upon the question and so satisfactorily demonstrates the correctness of his conclusion that we do not deem an extended discussion of the question necessary.

The Act of May 24, 1887, P. L. 185, provides: "That it shall be lawful for and it is hereby made the duty of the sheriff of each and every county in this commonwealth to appoint, and by deed duly recorded in the office of recording deeds in such county, a chief deputy, whose appointment shall be revocable at pleasure on recording in said office a written revocation thereon." The statute then defines the duties of the chief deputy sheriff and enacts that whenever the sheriff shall be temporarily unable by reason of sickness, or any other sufficient cause, to perform his duties in person, such chief deputy, upon an order of the court of common pleas first made for that purpose, shall have full power and authority, during such incapacity of the sheriff, to take charge of such office, and to execute and make returns of all writs and other processes directed to the sheriff, and to perform all other duties incumbent upon the sheriff, with like effect in law as if such official acts had been done by the sheriff in person. It thus appears that while an order of the court of common pleas is necessary to authorize the chief deputy to take charge of the office of the sheriff and perform all the duties of that officer, the court is without power to designate any other person. The sheriff must appoint a chief deputy, the duty imposed by the statute is absolute, although the sheriff is vested with a discretion in the selection of the officer. This being so, we cannot escape the conclusion that the appellant was a public officer within the meaning of the constitutional provision, as the learned president judge of the court below has well shown.

The appellant brings this action in his own name, but the parties, by agreement upon a case stated in the court

below, attempted to have the court decide in this proceeding the rights of a number of deputies in other county offices, asserting that the claims of the other deputies and all their rights were now vested in the plaintiff, to be recovered, if recoverable, in his own name. The legislation relating to the deputy recorder, deputy treasurer, deputy controller, and chief clerk of the county commissioners, is to be found in separate statutes, dealing with said offices, respectively, and having no relation to each other. Those officers have no joint right, nor have they any right in common, some of them may be public officers, within the meaning of the constitutional provision, while others may not be such officers. The salaries of these officers were not assignable, not so assignable at least, as to permit the assignee to bring an action against the county for the recovery thereof in his own name. The officers, other than the appellant, are not parties to this proceeding, nor would it have been proper for all these officers to join in this action. It is sufficient, for the purposes of this case, to say that this appellant is not entitled to recover, in an action in his own name, the amounts, if any, which may be due to the other deputies and chief clerks in the several offices of the County of Luzerne. We disclaim any intention to decide in this case what the rights of the deputies and chief clerks in the other officers of the county may be, under the Act of June 8, 1915, and the constitutional provision.

The judgment is affirmed.