Finley *v.* McNair, Appellant, et al.

Argued November 28, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Anne X. Alpern,* Assistant City Solicitor, with her *Ward Bonsall,* City Solicitor, *Charles J. Margiotti* and *John E. Evans, Sr.,* for appellant.

*C. Elmer Bown,* for appellee.

OPINION BY MR. JUSTICE LINN, January 7, 1935:

The question is—Does the position held by Finley make him an officer within article VI, section 4, of the Constitution, providing: "Appointed officers other than the judges of the courts of record and the superintendent of public instruction may be removed at the pleasure of the power by which they shall have been appointed"; or within article I, section 2, of the Charter Act for second-class cities (March 7, 1901, P. L. 20), providing: "The city recorder [now mayor] may by a written order to be transmitted to select council [now council] giving his reasons therefor, remove from office any head of department, director or other officer appointed by him."

Finley occupied a position created by a contract executed under the enabling Act of April 15, 1907, P. L. 80, by the City of Pittsburgh, the Philadelphia Company and the Pittsburgh Railways Company. The contract provided for a board, to be known as the Traction Conference Board, to be "composed of four members, two members appointed by the mayor of the city by and with the consent of the majority vote of council, one of whom shall be designated as and shall be chairman of the board; one by the joint action of those municipalities other than the

City of Pittsburgh signing agreements identical with this one; and one shall be selected by the new company; [for which provision was made in the agreement] and in case of failure of those municipalities so signing to select their representative by March 1, 1922, then the city shall select three members. The third member, who shall be so designated upon appointment, shall serve only until the appointment of the member representing the municipalities other than the City of Pittsburgh. On all questions coming before the board the decision of the majority shall be considered as the action of the board except as otherwise specified herein. In case of tie, however, the vote of the representative of the company shall not count. Each member shall hold office at the pleasure of the party appointing him. The city members, however, may be removed by the mayor only by consent of a majority vote of council."

The contract specified that it should remain in force for a term of years, which has since been extended by agreement. We understand that two members were appointed by the City of Pittsburgh, one by other municipalities, and one by the company, and that they entered upon the performance of their duties. Finley was designated chairman of the board.

He filed this bill charging that the mayor of Pittsburgh had sought to remove him from membership on the board without the consent of the majority of the council and also had threatened to use the police force to exclude him. The learned court below granted a preliminary injunction, which was continued until final hearing; from that decree, this appeal was taken by the mayor.

Several provisions of the Constitution have led to the consideration of what constitutes an officer. Article VI, section 4, contains the words "All officers," "appointed officers" and "all officers elected by the people"; "public officer" is used in section 13, article III. These terms include officers of the State, a county or a municipality: Houseman v. Com., 100 Pa. 222; Richie v. Phila., 225

Pa. 511, 514, 74 A. 430. Discussion has been clarified by contrasting the words "office," "position" and "employment" (Fredericks v. Board of Health, 82 N. J. L. 200, 82 A. 528; Pennell v. City of Portland, 124 Me. 14, 125 A. 143). Our cases have distinguished such "officer" from "subordinate ministerial agents or employees," such as "policemen, firemen, watchmen and superintendents of public property under the orders of the municipal department": Richie v. Phila., supra; Glessner's Case, 289 Pa. 86, 89, 137 A. 166. In determining whether a position is an office or an employment, it is generally said that the "question must be determined by a consideration of the nature of the service to be performed by the incumbent, and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one": Richie v. Phila., supra, at 515. Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a fixed period, acts under oath, gives a bond, and the source or character of the compensation received.*

---

* The following were held to be officers: *Treasurer, third-class school district,* Muir v. Madden, 286 Pa. 233, 133 A. 226; *Chief of Bureau of City Property,* Arthur v. Phila., 273 Pa. 419, 117 A. 269; *City Clerk, third-class city,* Com. ex rel. v. Likeley, 267 Pa. 310, 110 A. 167; *Borough Solicitor,* Ulrich v. Coaldale Boro., 53 Pa. Superior Ct. 246; *Inspector of Weights and Measures,* Com. ex rel. v. Hoyt, 254 Pa. 45, 98 A. 782; *Assistant Clerk, Orphans' Court,* Seltzer v. Fertig, 237 Pa. 514, 85 A. 869; *Collector of Delinquent Taxes,* Com. ex rel. v. Connor, 207 Pa. 263, 56 A. 443; *Assistant County Superintendent of Schools,* Foyle v. Com., 101 Pa. Superior Ct. 412; *Troop Captain, State Police,* Com. v. Miller, 94 Pa. Superior Ct. 499; *Chief Deputy Sheriff,* Dewey v. Luzerne Co., 74 Pa. Superior Ct. 300; *Registration Commissioners,* Com. v. Moore, 71 Pa. Superior Ct. 365.

The following were held not to be officers: *Policemen,* Com. ex rel. v. Black, 201 Pa. 433, 50 A. 1008; *Township Policemen,* Glessner's Case, 289 Pa. 86, 137 A. 166; *Medical Inspector, third-class school*

Undoubtedly, Finley occupied a position; he was employed. But the position was not created by the Constitution, by statute, or by the authorized delegation to a subordinate by any public officer of part of his governmental powers; it was created by the Philadelphia Company and the Pittsburgh Railways, as much as by the city. The duties of the members of the board cannot be said to be performed under the legislative, the judicial or the executive department of government. By the tests referred to, and by the terms of the contract, Finley was not an officer within the meaning of the constitutional provision (or of article I, section 2, of the Charter Act, supra) on which appellant must rely as authority to set aside the agreement of the city that the members of the board shall be removed only with the consent of the majority of the council. The constitutional provision (and the Charter Act) afford a quick method of removing an officer—i. e., one exercising governmental functions—in order that further misgovernment may cease: 7 Debates, Constitution of Pa. 559, 562; 8 Ibid. 122, 126. Finley's position is not within the reason for the existence of either provision. The constitutional provision and the Charter Act were in actual or constructive contemplation of the parties when the contract was executed; by requiring the consent of the council to remove any city member, the parties agreed by implication that the members of the board were not to have the status of officers within the constitutional sense. Now to contend that they did not mean what they said would require an imputation to the parties of a fraudulent intent which cannot be made. They were competent to define the status of members of the board.

The contract was made when the railway company, operating an extensive street railway system, was in the hands of receivers and was indebted to the city and to

*district,* Kosek v. School Dist., 110 Pa. Superior Ct. 295, 168 A. 518; *Counsel for Board of Registration Commissioners,* Alworth v. Lackawanna Co., 85 Pa. Superior Ct. 349.

others. It would seem that the general purpose of the arrangement was to conserve the street railway properties, improve the service, attract new capital, provide a plan by which the city, inter alia, might receive some, or all, of its indebtedness, by affording representation for all the municipal parties in the supervisory management of the railway company's affairs. It is unnecessary to recite the details of the contract; it included the formation of a "New Company," and the supervision and control of its capital, budget, rates of fare and payment of debts. It provided that the salaries of the members of the board should be paid by the railway company and charged to operating expenses. Any member of the board could be dismissed at any time by the party appointing him, the city, in such case, acting as the parties had agreed. There was no defined period of employment.

The city contends that Finley was entrusted with the receipt of public moneys, and must, therefore, be considered a public officer. The agreement, however, provides that the surplus, if any, shall be paid to the board each year for distribution to the city and other contracting municipalities. The funds at this stage were moneys due the public, but not yet public money.

The conduct of a street railway is not a municipal function, nor has the city taken over its operation. It may be said that it joined with other municipalities and with a company, apparently unable much longer to go on, in an arrangement relieving the immediate burden, in the hope that improvement in the railway system and car service could be worked out. In Helvering, Commissioner of Internal Revenue, v. Powers, 293 U. S. 214, (December 3, 1934), trustees, appointed by the governor with the advice and consent of the Council, operating the Boston Elevated Railway on behalf of the Commonwealth of Massachusetts, claimed exemption from federal income taxes, on the ground that they were "officers of the Commonwealth of Massachusetts and instrumentalities of government." Their claim was rejected. The

conduct of the street railway system was not the performance of a governmental function, and their operation of the system on behalf of the State did not make it governmental; they were not entitled to the immunity claimed; that the statute providing for them declared that they should be public officers, except in two respects, was immaterial to their claim. Finley's position was not created by statute and was not declared a public office.

Tried, now, by the standards referred to above, we have the members of this board acting, not for one, but for all the contracting municipalities, and for the company, in the management of an enterprise not conducted by the municipality; they are not employed in the performance of a municipal function or doing anything of a governmental nature; their terms of office are little better than at will; their compensation is paid, not by the municipalities, but by the railway company; no oath or bond is required; their duties are not prescribed by any statute. In no accepted view of the word officer, within the constitutional sense, can it be said that Finley was an officer removable by the mayor alone.

Having reached this conclusion, the argument in appellant's brief that the title to office must be determined by quo warranto has no application.

Decree affirmed at appellant's costs.