## Oblackovich v. McCormick

Before McWilliams, *P.J.*, O'Kicki, *P.J.*, O.C., Abood and Creany, *JJ.*

*Gilbert E. Caroff*, for plaintiff.
*Fremont J. McKenrick*, for defendant.

ABOOD, *J.*, June 26, 1978—Plaintiff, Stephen D. Oblackovich, Clerk of Courts of Cambria County, filed suit, in mandamus, seeking to require defendant, Robert J. McCormick, Jr., the Controller of Cambria County, to pay his salary at the rate of $18,500 per year from October 7, 1976, to the end of his term of office instead of at the rate of $15,500.

Plaintiff was elected to a four-year term of office in November of 1975 and took the oath of office as Clerk of the Courts of Cambria County on January 5, 1976. His term of office will expire on the first Monday in January of 1980.

On October 7, 1976, the Pennsylvania Legislature passed an act and the Governor signed same into law whereby the annual salary of the clerk of courts in a fourth-class county (Cambria County is a fourth-class county) was raised from $15,500 to $18,500 per year.

The Act of October 7, 1976, P.L. 1101, 16 P.S. §11011-8, which provided for the increase in salary, in section 2 reads as follows: "This act shall take effect immediately and shall be applicable to each officer when permitted by the Constitution of the Commonwealth of Pennsylvania."

Defendant asserts that article III (legislation), sec. 27, of the Pennsylvania Constitution of 1968 prohibits the increase in salary being paid to plaintiff during his current term of office.

Section 27 of article III of this Commonwealth's Constitution of 1968 reads as follows: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

If this provision in the Constitution actually prohibits payment of the increase sought, the following inescapable conclusions must be accepted. A clerk of the courts in a fourth-class county who assumed office in January of 1977 could receive the increase in salary and plaintiff in this case who assumed office in January of 1976 could not. If for any reason plaintiff's office became vacant on or after October 8, 1976, the successor appointed to the office would receive the increase in salary but if plaintiff remains in office he cannot obtain the increase. Furthermore, if plaintiff resigned his office and was reappointed any time after October 8, 1976, he would be entitled to the raise, but presently cannot receive same.

Article IX (Local Government), sec. 4 of the Constitution, reads as follows:

"County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law.

". . .

"County officers shall be paid only by salary as provided by law for services performed for the county or any other governmental unit."

Does the provision seen in article III, sec. 27, which defendant asserts as the prohibitive provision, apply to salaries established by the legislature for "County Officers"? Article IX, sec. 4, referred to above, states that county officers shall be paid salaries as provided by law. Reading section 4 of article IX in conjunction with section 27 of article III one must ask if the latter section really means that the county officers are to be paid that salary provided by law *prior to their election*. If that is to be the accepted interpretation then are the county officers pursuant to section 4 of article IX being paid salaries "as provided by law?"

Is article III, sec. 27 a restriction on county officers' salaries or is it, in fact, only a restriction on legislator's salaries?

Only the legislature can set its own salaries and those of the county officers. The county officers have no direct control over their salaries. See: Potter Co. Commissioners' Salary Case, 350 Pa. 141, 38 A. 2d 75 (1944).

There is no case directly on point with regard to the facts in the instant case since the adoption of

the 1968 Constitution. Article III, sec. 27, of the 1968 Constitution is a holdover provision of the former Constitution and was designated thereunder as article III, sec. 13.

Some of the cases decided under the former constitutional provision referred to are briefly outlined as follows.

1. In the case of Loushay Appeal, 169 Pa. Superior Ct. 543, 83 A. 2d 408 (1951), the court concluded that the expenses paid the County Commissioners of Bradford, pursuant to an act of the legislature, in a lump sum amount after they had assumed office was in violation of the Pennsylvania Constitution. The facts were as follows. The commissioners were elected in the general election of 1947 and took office in January of 1948. The legislature, in 1949, passed an act that became effective on July 1, 1949, whereby they granted expenses incurred in connection with the institution district in the sum of $1,000. For the last six months of 1949, the commissioners paid themselves $500 each pursuant to the act. The county auditors disallowed the payment and surcharged the commissioners. The court concluded that the commissioners were public officers within the meaning of the Pennsylvania Constitution and that the payment by way of the act was an increase in salary or an emolument and therefore not permitted.

2. In Hadley's Case, 336 Pa. 100, 6 A. 2d 874 (1939), the legislature, during the term of Office of the County Treasurer of Philadelphia County, passed an act which required the treasurer to pay all the fees and commissions collected for the issuance of various licenses into the county treasury rather than being kept as compensation by the

treasurer. The treasurer maintained on appeal, among other things, that the legislation was unconstitutional in that it diminished his salary or compensation. The Supreme Court dismissed the appeal saying that it did not violate the Constitution and went on to say:

"The purpose of the framers of the Constitution in placing limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the incumbents of office after they had been elected or appointed: 8 Deb. Pa. Const. 332, 333."

3. In Sellers v. Upper Moreland Twp. Sch. Dist., 385 Pa. 278, 122 A. 2d 800 (1956), plaintiff was elected in the May primary of 1953. By the Act of July 13, 1953, P.L. 411, 72 P.S. §5511.4, the school districts identified therein by class were to pay the premium on the bond to be posted by the tax collector. The act was to become effective after December 31, 1953. Plaintiff was elected at the November 1953 election and therefore plaintiff was elected before the act became effective. Plaintiff maintained the school district should pay the cost of the bond. The school district refused to pay same. The court concluded the school district was correct. Since the act became effective after his election it would, if the school district paid the premium, result in an increase in compensation after his election. The court concluded that article III, sec. 13, of the Pennsylvania Constitution prohibits such, directly or indirectly.

4. In Apple v. Crawford County, 105 Pa. 300 (1884), the Sheriff of Crawford County took office on January 6, 1879. During the year 1879 he was

paid 50 cents per day for each prisoner and this payment was made pursuant to the Act of April 8, 1867, P.L. 909. By the Act of June 4, 1879, P.L. 82, the former act was repealed and the county court set the compensation at $2.50 per week. The sheriff sued for the difference asserting this diminished his compensation. The Supreme Court agreed and permitted a recovery.

To interpret article III, sec. 27, as the courts have previously interpreted article III, sec. 13, of the former Constitution could lead to bizarre results, particularly in light of the holding in the Sellers and Hadley's cases, supra. For example, suppose a person ran for the office of clerk of courts in their party's primary and won nomination. Presume also that the salary of the clerk at that time was $18,500 per year. Suppose also that after the primary election but prior to the general election the legislature passed an act reducing the clerk of courts' salary to $15,500. If that same person wins the general election and takes office the following January, we must presume the salary would be $15,500 rather than $18,500. Presuming that to be true, if the legislature in that same January again raised the salary to $18,500, the clerk of courts who just assumed office would presumably be out of luck. What did the clerk of courts have to do with the establishing of the salary? The legislature is entirely in control.

If the legislature, or majority of same, were so inclined, after the primary elections in each year they could control what the salary of the to-be-elected county officials would be.

It is true that legislators who would manipulate salaries in such an arbitrary or capricious way

might well be removed from office by concerned voters in their ensuing elections.

However, if reason dictates that the Constitutional prohibition applies only to the legislators themselves, then their actions relative to raises or decreases as regards their salaries and those of county officers will nevertheless be scrutinized by the voters of this Commonwealth as well it should be.

Under the 1968 Constitution, as adopted, article IX, sec. 4, in the last paragraph provides that county officers shall be paid only by salary as provided by law. It does not say as provided by law immediately prior to their election.

Reason requires that section 27 of article III be read in conjunction with section 4 of article IX and a conclusion that because the legislators of the Commonwealth of Pennsylvania, through legislation, control salaries of public officers and county officers that the restriction applies only to their legislative salaries and none other. This is so because they must necessarily answer to the voters of the Commonwealth regardless of the increase or decrease in county officers' salaries.

This opinion has not dealt with the legion of reasons which would justify the increase economically because despite being clearly self-evident, they are irrelevant.

Plaintiff initially filed suit in mandamus and subsequently a petition for a declaratory judgment was filed in conjunction seeking an interpretation of the Act of October 7, 1976, P.L. 1101, 16 P.S. §11011-8. The matter was submitted to the court en banc for determination on the pleadings after oral argument and briefs being submitted by counsel.

Pursuant to the pleadings filed and the above opinion the following is hereby entered.

## ADJUDICATION AND ORDER

And now, June 26, 1978, the adjudication of this court is that section 2 of the Act of October 7, 1976, P.L. 1101, does not prohibit the payment of the increased salary to plaintiff and therefore the verdict of this court in the mandamus action is rendered in favor of plaintiff and against defendant, and defendant is hereby directed to pay the increase in salary to plaintiff computed as of the date of the filing of plaintiff's complaint and this order shall become final in the event no post-trial motions are filed within the time required by law and in the event post-trial motions are timely filed, these proceedings shall be stayed until same are determined as well as any appeals thereafter.

## CONCURRING OPINION

O'KICKI, P.J., O.C., June 26, 1978—The legal findings and reasoning set forth in Judge Abood's opinion are a correct statement of the present-day law. The purpose of this concurring opinion is only to point out that the constitutional changes to the judiciary article in 1968 have made overwhelming and sweeping changes.

In a democratic society the voice and will of the people are set forth in a leading document, a Constitution. It rises higher than the legislative enactments and higher than court decisions. It is basic grade school knowledge that our government is founded upon a tri-party system—legislative,

executive, and judicial. Each branch of government acts independently, but each checks and balances the other. As is true in most constitutional documents the articles are in fact a visionary approach for self-determination. Both our Federal and State Constitutions have withstood changes emanating from economical, financial, legal and social turmoil.

Just as Marbury v. Madison, 1 Cranch 137 (1803), in the fledgling days of our Democracy set forth the inviolate principle that there is a separation of powers between state and Federal governments, so too our Constitution provides for the separation of powers within the state government.

In Sweet v. Pa. Labor Relations Board, 457 Pa. 456, 322 A. 2d 362 (1974), the Supreme Court at page 462 said:

"The relation of employer and employe exists when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done. [Citation omitted] The duty to pay an employe's salary is often coincident with the status of the employer, *but not solely determinative of that status . . .*

"The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice." (Citation omitted.)

Our present Supreme Court in Sweet, supra, quoted with approval the analysis of Chief Justice Maxey of the Pennsylvania Supreme Court, who said as early as 1928:

" 'The power to appoint necessary attendants upon the court is inherent in the court in order to enable it to perform properly the duties delegated to it by the constitution, and it cannot be doubted that judicial power includes the authority to select persons whose services may be required in judicial proceedings or who may be required to act as assistants of the judges in the performance of their judicial functions.' "

From a reading of the language in Sweet, supra, it appears that plaintiff, who is clerk of courts, is the director and supervisor of employes whose functions are essential to the operation of the courts. Although plaintiff himself, because of his supervisory position is an elected official in accordance with the Constitution and statutes of this Commonwealth, his duties and responsibilities are those defined as necessary for the operations of the courts. It is our finding that plaintiff, a duly elected Clerk of Courts of Cambria County, is an officer whose directions and duties are specified and necessary for the court system.

This court likewise takes judicial notice of plaintiff's dilemma occasioned by a fact common to all working citizens and particularly oppressive to those who seek to retire or have retired. This court takes judicial notice of the consumer price index as prepared by and published by the Bureau of Labor Statistics, United States Department of Labor. Such index dramatically points out that there has been a 49 percent increase in the cost of living from January 1972 until September 1977, the time of the filing of this complaint. Such an increase in inflation over the past five years has effectively diminished plaintiff's salary from $15,500 to $7,900.

Such a reduction in salary is not conscionable, not only to plaintiff but to all persons on fixed incomes, be they from investments, pensions or wages.

This court likewise takes judicial notice of the fact that collective bargaining agreements in all phases of industry today as well as public employment, take into consideration periodic adjustments for wage and salary increases occasioned by a rise in the cost of living. The cost of living adjustment factor was spearheaded by the United Steel Workers of America and now exists in practically every collective bargaining argeement throughout the country. At a time when increased legislation in all fields of the law place increased burdens upon all phases of the judicial system, it is absurd to ask competent officeholders and employes within that system to increase their work productivity while at the same time reducing their real wages.

This court stands firm in its interpretation that plaintiff is an officer within the unified judicial system as set forth by the amendments to the Constitution of 1968. A proper interpretation of those powers would mean that it is primarily the responsibility of the Pennsylvania Supreme Court, and where it does not act then the court of common pleas, to adjust and set the salary of judicial officers within its system as well as the employes directly under supervision of these judicial officers. However, this interpretation must yield temporarily to the decision of the Commonwealth Court in County of Washington v. P.L.R.B., 26 Pa. Commonwealth Ct. 315, 364 A. 2d 519 (1976). That 1976 Commonwealth Court decision is on appeal before the Pennsylvania Supreme Court who will ultimately decide who are proper employers, employes and of-

ficers within the unified judicial system. Thus, understandably, neither the court of common pleas nor the Supreme Court has set any wages or salaries for the persons performing duties within its system since the 1968 amendments. The setting of salaries for county row offices, including those in the unified judicial system, have historically and traditionally been set by the legislature.

For the Pennsylvania Legislature or any legislative body to condone or permit inflation to erode the effectiveness of the executive or judicial branches of government will only lead to a destruction of our tri-party system of democratic government.

By failing to adjust all salaries in the judicial, executive, as well as the legislative branches of government in accordance with the rise in the cost of living, the inaction or political ineptness will lead to the establishment of a super-legislature whose actions will be structured to infringe and undertake those functions of government which constitutionally and inherently belong to the executive and to the judicial branches, but cannot be performed because of a lack of adequately paid manpower to perform those vital functions.

Had plaintiff resigned his job for one day and been re-appointed, he would be entitled to the increased salary; had he vacated his office by death, his inexperienced successor would get the increased salary. Other row officers have received the increased salary. It occurred with the re-election of the sheriff as well as the recent appointment of the recorder of deeds. There is no logical or legal basis for this monetary difference in the operation of a salary law. The interpretation of the problem by defendants is discriminatory since it

fails to provide essentially equal pay for equal work and, thus, is violative of numerous Federal statutes; it also is demoralizing to those adversely affected by the operation of such an interpretation.

Therefore, I concur with Judge Abood in result and would grant plaintiff's prayer for writ of mandamus requiring the controller to pay the increased salary to plaintiff computed as of the date of the filing of plaintiff's complaint. I would also grant judgment in the declaratory judgment proceedings affirming the application of the law as being permitted by the Constitution, and not in contradiction to the Constitution.

Accordingly, I would enter the following

## ORDER

And now, June 26, 1978, it is the order and direction of this court that section 2 of the Act of October 7, 1976, P.L. 223, does permit the payment of an increased salary to plaintiff, an officer of the unified judicial court system, as provided by the Constitution of Pennsylvania, and that there is no prohibition in the Constitution of Pennsylvania against any increased payment of salary to plaintiff.

Where both the Supreme Court of Pennsylvania and the Court of Common Pleas of Cambria County have not exercised their supervisory rights in granting increases in pay to officers and employes within its system, then the legislature may accordingly act.

## DISSENTING OPINION

McWILLIAMS, *P.J.*, June 26, 1978—Plaintiff, Stephen D. Oblackovich, Clerk of Courts of Cam-

bria County, filed suit, requesting declaratory judgment and in mandamus, seeking to require defendant, Robert J. McCormick, Jr., the Controller of Cambria County, to pay his salary at the rate of $18,500 per year from October 7, 1976, to the end of his term of office instead of at the rate of $15,500.

Plaintiff was elected to a four-year term of office in November of 1975 and took the oath of office as Clerk of Courts of Cambria County on January 5, 1976. His term of office will expire on the first Monday in January of 1980.

On October 7, 1976, after he had begun his tenure of office, the Pennsylvania Legislature passed an act and the Governor signed same into law whereby the annual salary of the clerk of courts in a fourth-class county (Cambria County is a fourth-class county) was raised from $15,500 to $18,500 per year.

The Act of October 7, 1976, P.L. 1101, 16 P.S. §11011-8, which provided for the increase in salary, in section 2 of same, reads as follows: "This act shall take effect immediately and shall be applicable to each officer when permitted by the Constitution of the Commonwealth of Pennsylvania."

Defendant asserts that article III (legislation), section 27, of the Pennsylvania Constitution of 1968 prohibits the increase in salary being paid to plaintiff during his current term of office.

Section 27 of article III of this Commonwealth's Constitution of 1968 reads as follows: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

This is the same section that was in prior Constitution of 1874 as Article III, sec. 13.

The Attorney General's Office of Pennsylvania

was notified of this case as provided by law (Pa.R.C.P. 235) but declined to participate. Upon inquiry, his office has stated it would be up to each county solicitor (as county row officers are paid out of the county treasury) to rule on whether salary increases go into effect now or after the incumbents have completed their present terms.

This court has jurisdiction to hear the instant matter. "The compensation clause does not in terms make the legislature the 'judge' of the existence or extent of salary diminution, though it does expressly forbid salary changes that amount to diminishments." The courts remain the final interpretors of the Constitution commands, including the compensation clause: Atkins v. U.S., _____, decided May 18th, 1977, pp. 36, 37.

Although the court would have no power to grant mandatory relief on complaint that inflation without substantial pay increases has diminished the real salary value as the Constitution affords no protection from such indirect nondiscriminatory lowering of compensation, yet inflation, the direct diminution of salary by economic duress must and has been recognized: Atkins, supra, 42 and 43. This is a matter that the legislature should eventually resolve: Atkins, supra, 34. We as a court must recognize salary and cost of living clauses as two distinct provisions now existing in contracts. The legislature fixes compensation of the county officers, i.e., the clerk of courts, except in home-rule counties: Potter Co. Commissioners' Salary Case, 350 Pa. 141, 38 A. 2d 75 (1944); also see 16 P.S. §11011-8.

The clerk of courts in the instant case is a public officer. The term "public officer" as used in this act shall include all officers elected by the vote of the

people, whether the offices they fill were created by the Constitution or by special or general acts of assembly: Act of March 2, 1911, P.L. 3, sec. 6, 65 P.S. §76. See also Loushay Appeal, 169 Pa. Superior Ct. 543, 83 A. 2d 408 (1951), affirmed 370 Pa. 453, 88 A. 2d 793 (1952) (county commissioners held to be public officers); also Finley v. McNair, 317 Pa. 278, 176 Atl. 10 (1935).

The Constitution is quite clear. No law shall increase a public officer's salary after his election or appointment. See In re Bowman, 111 Pa. Superior Ct. 383, 170 Atl. 717 (1934), and Goodwin v. Allegheny County, 182 Pa. Superior Ct. 28, 125 A. 2d, 640 (1956) (register of wills and clerk of orphans court were public officers involved).

The Constitution is equally clear that no law shall diminish a public officer's salary after his election or appointment applying to statutory as well as constitutional officers. See Com. ex rel. Kelley v. Clark, 327 Pa. 181, 193 Atl. 634 (1937); also Bowman case, supra.

The purpose of the prohibition against the increase or diminution of salary or emoluments of a public officer after his election or appointment was to eliminate political or partisan pressure on the incumbents of office after they had been elected or appointed: Hadley's Case, 336 Pa. 100, 6 A. 2d 874 (1939). Following the precedents that we have, and considering the fact that the compensation clause which is the subject of interpretation is the same clause without any change as it was in the 1874 Constitution, I believe the law is quite clear in the instant case that the salary increase goes into effect after the incumbents have completed their present terms, but since the office in question, i.e., clerk of court is paid out of the county treasury, as to cost of

living adjustment by the commissioners on resolution based on the consumer price index and prospectively applied (for budgetary reasons) such resolution should be considered and equity demands its consideration and we found no constitutional restriction impairs such cost of living adjustment.

The prohibition of this constitutional section against increasing or decreasing the salary of a public officer after his election or appointment relates only to "laws and not to resolutions." Emmaus Taxpayers' League v. East Penn Union School District, 12 D. & C. 2d 103, 27 Lehigh 317 (1957). A resolution passed by the board of county commissioners is not a law against which said constitutional provision is directed: Crawford County v. Nash, 99 Pa. 253 (1882), and Thomas v. Leslie, 13 Justice's L. Rep. 149 (1914); Opinion of Attorney General, 68 D. & C. 2d 517 (1974).

Therefore, after full consideration, I would enter the following

## ORDER AND DECREE

And now, June 26, 1978, as to the mandamus action in the instant case before us, there was no resolution by the commissioners and salary board, which is sine qua non, that action must be dismissed but without prejudice. As to the declaratory judgment, we feel the opinion is self-explanatory.