CASE 36—PETITION EQUITY—MAY 24.

# Alexander v. Woodford Spring Lake Fishing Company.

90  215
105  786

90  215
f131  7

APPEAL FROM WOODFORD COURT OF COMMON PLEAS.

ESTOPPEL.—The owner of land having stood by, and, without objection, permitted the erection of a dam, knowing that it would overflow his land, and knowing further that the corporation erecting the dam believed that the title to all the land to be covered by the water was in his son, from whom the corporation had a deed granting the use of the land to be covered by the water, he is estopped to deny the right of the company to maintain its dam; and the fact that there has been a break in the dam, rendering it worthless in its present condition, does not amount to an abandonment by the corporation of its original entry, or deprive it of the right to restore the dam to its original condition. The right to maintain the dam at the height provided by the deed from the son is a right of property that is valuable to the corporation; and the father having acquiesced in the erection of the dam

at that height, and, as a member of his son's family, enjoyed the use of the pond under his son's contract with the corporation, he is now estopped to prevent the corporation from repairing its dam so as to restore it to its original height, although his land will be again over-flowed.

WM. LINDSAY and W. S. BARBOUR for appellant.

1. To enable one to set up a title by estoppel, it must appear (1) that the party making the admission by declaration or conduct was apprised of the true state of his own title; (2) that he made the admission *with intent to deceive*, or with such culpable and careless negligence as to amount to constructive fraud; (3) that the other party was not only destitute of all knowledge of the true state of the title, but of *all means* of acquiring such knowledge, as by recourse to records, and further, that he relied directly on such admission, and will be injured by allowing its truth to be disproved. (Herman on Estoppel, pp. 414, 415, 421, 423, 426, 428, 429, 433, 439; Washburne on Real Property, vol. 3, pp. 75, 77, 78, 79, 80, 83.)

James Alexander's acts were not designed to deceive, and did not deceive; his acts did not form the inducement for appellees' action, and no act of his can be construed as a fraud upon their rights; appellees had the means of acquiring knowledge of the facts, upon the ignorance of which they rely, by a recourse to the records.

2. Conceding that James Alexander did, by parol, license the company to overflow him, he can revoke the license, especially as the breaking of the dam has placed the parties substantially *in statu quo*. (Washburne on Real Property, vol. 1, 632, 633, 635, 637.)

A license to occupy the lands of the licenser is always revocable. (Washburne on Real Property, vol. 1, 639; Dillon v. Crook, 11 Bush, 321; Goodhue v. Crider, MS. Op., June 5, 1884.)

3. A married woman who joins with her husband to convey lands in which she has only a contingent right of dower can not bind herself by covenant, executory or otherwise, so as to affect her after acquired rights.

D. L. THORNTON and H. C. McLEOD for appellees.

1. If a party having an interest in preventing an act being done acquiesces in it so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no right to challenge the act to their prejudice; and where one stands by and sees others expend money upon property, which affects his rights, of which they are ignorant, his silence constitutes an estoppel. (Herman on Estoppel, vol. 2, secs. 1061, 1063, p. 1194; *Idem*, sec. 1221, p. 1360; *Idem*, secs. 405, 407, 408; Brothers v. Porter *et al.*, 6 B. M., 113; Ringo v. Water, 6 B. M., 519; Davis v. Tingle, 8 B. M., 542; Phillips v. Clarke, 4 Met., 348; Stone v. Werts, 3 Bush,

Alexander v. Woodford Spring Lake Fishing Company.

490; Foster v. Shreve, 6 Bush, 529; Ramsey v. Clark & Montgomery Turnpike Company, 1 Ky. Law Rep., 308; Khemp v. Liebold, 8 Ky. Law Rep., 684; Lyne v. Bank of Ky., 5 J. J. Mar., 545; Roberts on Fraud, 527-528, &c.; Story's Eq. Jur., secs. 1442-1446, Redfield's ed.; St. Julien v. Railroad Co., Chicago Law J., Nov., 1884; Crest v. Jack, 27 Am. Dec., 353; Henderson v. Overton, 24 Am. Dec., 492.)

To sustain the plea of equitable estoppel, it is not necessary that there should have been an intention at the time to deceive or defraud. (Anderson v. Hubble, 93 Ind., 570; 47 Am. Rep., 395.)

All of the elements necessary to bring the case at bar within the foregoing rules appear in this record.

2. There is enough in the record to defeat appellant's claim to relief, regardless of the force of the plea of estoppel against James Alexander himself. Appellant joined with her husband in the deed with general warranty, and actively participated in the furthering of the project, as well as in the enjoyment of its fruits. (Heck v. Fisher, 78 Ky., 643.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

A number of citizens living in or near the town of Versailles formed themselves into a joint stock company, with a view of constructing a pond and stocking it with fish. The corporation was known as the Woodford Spring Lake Company, with a capital stock of two thousand five hundred dollars, in shares of fifty dollars each. It purchased, through its chief officers, a site for the dam from Charles Alexander and A. C. Hunter, obtaining deeds that were duly executed and recorded, with the relinquishment on the part of the wife of each grantor, and granting the use of their land to be covered by the water when the dam was raised to a certain height, with the right of ingress and egress to and from the improvement. The company proceeded to construct the dam and to stock it with fish, and, after propagating the fish in great numbers, enjoyed the use of the lake for the purposes of fishing, boating, &c., for several years, when

a leak was found in the dam, or a part of it washed off, so as to threaten the entire destruction of the enterprise.  The company had expended, in the construction of the improvement, and in other respects, for the purpose of making the dam secure, a sum exceeding fifteen hundred dollars.  When the company began to repair their dam, or talked of doing so, James Alexander, the father of Charles Alexander, filed his petition in equity, seeking an injunction, preventing the company from repairing the break in the dam, for the reason that when repaired it would back the water to such a distance as would cause it to flow back upon his land, and there remain permanently to his great and irreparable injury.

A temporary injunction was granted that was dissolved by the final judgment.  The plaintiff, James Alexander, died during the progress of the action, and having left a last will, by which that part of the land over which the water would extend if the dam was repaired, was devised to the wife of his son, Charles Alexander, she was made a party-defendant, and is now the appellant in this court.

When this corporation was formed, and while the dam was being constructed, James Alexander and his son, Charles Alexander, lived in the same dwelling, within a few hundred yards of the lake, where they continued to reside to the death of James, and where the appellant now resides.  The family of Charles Alexander, including his father, James Alexander, enjoyed the benefits resulting from the construction of the dam and the formation of this lake, by fishing and boating in and upon it, exercising the same rights

and privileges in that respect with all the members of the corporation. This, in fact, was both tacitly and expressly agreed upon between the members of the corporation and Charles Alexander when the conveyance under which the company entered was made. Charles Alexander and Hunter were made members of the corporation, and released from the payment of stock by reason of their conveyance, and, as an additional consideration, were permitted, with their families and friends, to enjoy the rights and privileges that the other members had in this lake. It clearly appears that Charles Alexander and his family, including the father, the original plaintiff in the action, enjoyed and exercised the privilege of fishing in the same manner the other members did, and this enjoyment continued until the break in the dam occurred, and the attempt to repair was made, when James Alexander, for the first time, objected to the repair, because the water overflowed his land.

The elevation of the dam was twelve feet, as originally made, or at least as authorized by the conveyance from Charles Alexander and Hunter to the appellees. There is no pretense that the repairing of the dam would cause the water to overflow the appellant's land to a greater extent than before the break was made. The fact also appears that the corporation and its members, except Charles Alexander, were ignorant of the fact that James Alexander owned any part of the land covered by the lake, and, in pursuance of their belief that their right of entry was fully justified, when obtaining the deed from Charles, the son of James, went upon the land and made this large ex-

penditure for the use and enjoyment of all interested,. and were not apprised of the title of James until several years after their claim of right began and the lake had been made.

By the repair the water covers the same land of the appellant that it did before, and no more. James. Alexander knew of his title when the dam was being constructed. The appellees were ignorant of his claim. He permitted this expenditure to be made when he knew the water, by reason of the dam, would overflow the land. He was present, or living within three hundred yards of the dam, when the survey was made. He saw, or was in a condition to see, the work as it progressed from day to day. He consulted with Judge Graves and others as to its construction, and made suggestions that were followed when the dam was being built. He was a member of the family of his son, Charles, and as such enjoyed the use of the lake in conjunction with Judge Graves,. who devoted his time and labor to the success of the undertaking. Under such circumstances, will the appellant, as a. purchaser from James Alexander, with a knowledge of all the facts, be permitted to cause the loss of the expenditure, and deprive the company of its right to repair ?

It is contended for the appellant that as the company had all the means of acquiring knowledge as to the title of James Alexander, the latter had the right. to remain silent, and to reclaim or assert his right to the possession of this land at any time not exceeding the statutory bar. The right to the easement in this case is not made to depend upon the question as to

whether or not the title in James Alexander might or not have been ascertained by the corporation. The question at issue is not affected by the rule contended for by the appellant. Silence when one ought to speak may, and often does, work an estoppel, although there is no actual fraud or a purpose to deceive. There is nothing in this record showing that James Alexander intended to deceive or defraud this company, but, on the contrary, it is manifest that he consented to the erection of this dam with a full knowledge that it would overflow his land. His silence gave this consent, and his participation in the enjoyment of the use of the lake for years gave further and stronger proof of his consent. There was no reason for making any inquiry as to the condition of the title of James Alexander. The son, who owned the land when the dam was built, was supposed to own it as far as the water would be thrown back, and the appellant, by his silence, acquiescence and active participation in the use of the thing constructed, has said that this right of entry belonged to the son.

Suppose this strip of land had been surveyed, and a deed made to the company by the son in the presence of the father, and the money paid, would it then be contended that the father could assert his claim for the reason that, by a survey or an examination of the records, the company could have ascertained that the title was in the father, and not the son? We think not. The acts of James Alexander in this case were equivalent to saying that this easement, or the right to confer it, is with my son: make your expenditure, and I will enjoy its fruits.

It is plain that a freehold or an easement can not be created without a conveyance. This is the recognized doctrine; but there may be an equitable estoppel, such as to prevent the real owner from interfering with an easement created by an entry and an expenditure of money by reason of the owner's silence or consent, and where the party entering has no other means of redress. If one stands by and sees another build a house on his land, the latter acting in good faith, and believing that it belongs to him, will the real owner be permitted to stand by and see the house erected, and then assert his title for the first time? Equity will prevent him from speaking when, as a conscientious man, he should remain silent.

Mr. Herman on Estoppel says: "When a man, with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does any thing which amounts to a recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly and deliberately permits another to deal with property or incur expense under the belief that the transaction has been recognized, * * * the transaction, although originally impeachable, becomes unimpeachable in equity." (Section 1063.)

It is true that the appellant, by permitting an entry on his land that has been abandoned, does not thereby consent that another entry of a like character shall be made, but the facts here present no such case. There has been no abandonment or destruction of the rights of the appellees. The dam or lake is, or may be,

worthless in its present condition, but, with an expenditure for repairs, it becomes as valuable as ever. The possession for the uses contemplated is with the appellees. They have never surrendered it, and the rights of the company or the appellant in the lake can not be measured by the rise and fall of the water. The right to maintain the dam at the height provided by the deed is a right of property that is valuable to this corporation, and the question is, whether it shall be deprived altogether of its expenditure, or the appellant required to abide by an act that he not only acquiesced in, but sanctioned.

In 2 Smith's Leading Cases, 737 (7 Am. ed.), in a note, is said: "It has, in like manner, been long and well established in equity, and is now held in most courts of law, that every one who encourages, or even stands by and sanctions the acquisition of land by another, will not only be estopped from invalidating the interest thus acquired by the subsequent assertion of a title which he held with full knowledge at the time, but may be compelled to execute a conveyance to the purchaser." While this doctrine may be regarded as extreme, it is well settled that where one with full knowledge of his title sees another, ignorant of the facts, purchasing and paying for that which belongs to him, and says nothing, he will be precluded thereafter from setting up title.

In Anderson v. Hubble, 93 Ind., 570, it is said that positive fraud is not required to be shown in order to work an equitable estoppel on the part of one asserting title. "If his silence or conduct creates a belief of the existence of a state of facts, it would

be unconscionable to deny it creates an equitable estoppel." This is the doctrine applicable to the present case, and a court of equity should not hesitate to apply it.

It is argued that when the dam was being constructed the son, Charles, had the fee, and there was no reason for his father to interpose any objection. The use of the land covered by the elevation of the dam was equally as necessary as the dam itself, for without it no lake could be made. This the plaintiff knew; and he also knew that the right to use this land by the company was a right that he alone could confer, and with this knowledge stood by and saw the expenditure made by the company, and his land applied to its use under the deed from his son, and made no objection whatever, but availed himself of all the privileges conferred by the company on his son's family (he being a member) by the deed evidencing the company's right of entry, and now is asserting a right that, if enforced, would destroy the entire corporate property.

The chancellor below refused to perpetuate the injunction, and in this we concur. Judgment affirmed. (Sale v. Crutchfield, 8 Bush, 636; Foster v. Shreve, 6 Bush, 519; Ringo v. Warder, 6 B. M., 514; Phillips v. Clark, 4 Met., 348.)