Magri *v.* McCurdy, Appellant.

Argued December 12, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Harold B. Beitler,* for appellant.

*William T. Connor,* and with him *John R. K. Scott,* for appellee.

OPINION BY STADTFELD, J., March 1, 1935:

This is an appeal by defendant from the judgment entered on a verdict in favor of plaintiff in an action of trespass for personal injuries sustained as the result of a collision between a three-wheeled motorcycle on which plaintiff was riding and an automobile driven by defendant.

The accident happened about 10:30 A. M. on February 2, 1933. Plaintiff rode a three-wheeled motorcycle, and defendant drove a Buick business coupe. Both were traveling in a southerly direction on Bryn Mawr Avenue, in the city of Philadelphia, which is 50 feet wide from curb to curb, with 25 foot sidewalks. Wynnefield Avenue, which is 40 feet wide from curb to curb, with 30 foot sidewalks, runs east and west and crosses Bryn Mawr Avenue at right angles. A traffic light on a concrete base, showing red, amber and green lights, stood at the centre of Bryn Mawr Avenue and at the extreme north side of Wynnefield Avenue. As plaintiff and defendant proceeded south on Bryn Mawr Avenue, down a steep grade to a point about 100 yards north of Wynnefield Avenue, and then down a slight grade from there to the intersection, they travelled at the same speed; when defendant increased his speed, plaintiff increased his. In all this distance, plaintiff kept his motorcycle slightly to the east of the line of travel of defendant's automoble "about abreast of it." Defendant's automobile was equipped with an arrangement by which a red light on the rear is made to shine when the brake is applied, indicating that the car is going to slow down. Plaintiff rode in such a position with relation to defendant's automobile that he could not see this rear light. As defendant approached Wynnefield Avenue he applied his brake, and when he got about three feet past the traffic light, which stood on the extreme north side of Wynnefield Avenue, turned to

his left to go east on Wynnefield Avenue. As he did so, plaintiff's motorcycle collided with the left rear end of defendant's automobile, at a point about 3 feet south of the traffic light. There was no northbound traffic on Bryn Mawr Avenue at the time. Defendant looked in his mirror as he approached Wynnefield Avenue and saw an automobile back of him but never saw the motorcycle until after the collision.

According to plaintiff's testimony, before defendant made a left-hand turn to the east, his windows were all up and he gave no warning of his intended turn.

At the conclusion of the testimony, the court refused a request for binding instructions in favor of defendant and submitted the case to the jury with instructions as follows: "If Magri was lying in a position where he could be seen in the looking glass that gave a picture of the whole road to the man who was driving, that would be one situation, but if he was lying so close up that he could not be seen, it is pretty hard to blame McCurdy for not guarding against a man whose presence he did not know of. ...... I will have to tell you as matter of law that if McCurdy did know that Mr. Magri was back of him, as well as the other car, he ought not to have made any sudden movement that would have put Magri in danger, without giving Magri a fair advertisement or notice of what he was going to do. The usual way people do that sort of thing, before they invented this red light equipment, was to put the hand out, which would be a warning. I suppose you have noticed you never can tell which way the man is going to turn but you knew he was going to do something. The driver who sat on the left-hand side would put his hand out on the left even though he was going to turn to the right, but that would at least act as a warning that he was going to do something that would affect you. But lately

the cars seem to be equipped with a rather effective guard, in that red light which goes on when the brakes are applied, so that you can stop your car and warn the man behind you. That, of course, would be an adequate warning to the person behind, if he was acting with precaution for his own safety. In other words, with the car ahead of him, he could see the red light and would be bound to be governed by that, being notice that something was going to happen. Of course, the difficulty would be that maybe this was not the exact situation in this case. Maybe you will find, and it would certainly be so if you relied on the broker's testimony, that Magri was lying so close up to the other car that he could not be warned by the red light, or the other man would not know of the necessity for warning him. I do not know that there is anything else I need to say to you about the matter. It is really a matter of fact. If Magri was lying so close behind McCurdy that he could see the red light, I do not see any necessity on the part of McCurdy to put out his hand.''

The jury rendered a verdict in favor of plaintiff. A motion for judgment for defendant n. o. v. was overruled.

Under the circumstances, all the evidence and inferences therefrom, favorable to plaintiff, must be taken as true and all unfavorable to him, depending solely on the testimony, must be rejected: Vendig v. Union League of Phila., 291 Pa. 536, 140 A. 503; Frank v. Reading Co., 297 Pa. 233, 146 A. 598.

The following provisions of the Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, PS. Title 75, pp. 67 et seq. are relevant in the instant case: ''Section 1011. Turning at Intersections.—(b) The driver of a vehicle intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest

to the centre line of the highway, and, in turning, shall pass to the left of the center of the intersection, keeping as close as shall be practicable to the center of the intersection ......

"Section 1012. Signals on Starting, Stopping or Turning.—(a) The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, ...... (b) The signal herein required shall be given either by means of the hand and arm, in the manner herein specified, or by an approved mechanical or electrical signal device, ...... 1. Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop, or turn, by extending the hand and arm horizontally from and beyond the left side of the vehicle, or, if he is driving a closed vehicle, by his hand and arm in such a way as to be visible through the window in the rear of the vehicle.

"Section 1013. Right of Way.—(b) The driver of a vehicle, street car, or trackless trolley omnibus, approaching but not having entered an intersection, shall yield the right of way to a vehicle within such intersection (and) *or* turning therein to the left across the line of travel of such first mentioned vehicle, *provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required in this act.*" (Italics supplied)

In a somewhat analogous case, Nold v. Higgins Lumber Co., 276 Pa. 195, 119 A. 919, the Supreme Court, in an opinion by Mr. Justice SCHAFFER, said, at page 198: "Even if a signal was given, and there is evidence that it was by a witness other than the truck driver, the sudden swerve of the car to the left into the other vehicle abreast of it, which the truck driver admits he had not observed, would be sufficient, if found by the jury, to establish a negligent operation

of the truck under the circumstances. What was said by Mr. Justice Frazer in Piper v. Adams Express Co., 270 Pa. 54, 60, is apposite here: 'Conceding his right to use any portion of the highway open to him and which circumstances, or his desires, may prompt him to use, his rights were necessarily subject to equal rights on the part of other users of the highway, and in passing from one side to the other he was bound to do so with proper regard to the rights and safety of others. Whether defendant's driver performed his duty in this respect was necessarily for the jury. Both vehicles were lawfully using the street and each was bound to do so with due consideration for the rights of the other'."

In Smith v. Yellow Cab Co., 285 Pa. 229, 132 A. 124, Mr. Chief Justice Frazer said, at page 231: "On a wide city thoroughfare, such as here existed, where traffic is frequently congested, it is not unusual to see two or more cars running abreast of each other, making it impossible for one to suddenly change its course to the right or left without causing a collision. Although, it is true, there is evidence that defendant's driver, held out his hand as a warning signal of his intention to turn, this was denied, and, as the verdict indicates the denial was accepted by the jury. The result showed that either the warning, if given, was not observed, or that it came too late for the driver of the other car to act upon it. It was for the jury to say whether, under the particular circumstances, the cab driver took the reasonable precautions the situation required of him."

In Jamison v. Kammerer, 313 Pa. 1, 169 A. 231, the Supreme Court, in an opinion by Mr. Justice Simpson, said on p. 4: "On the other hand, defendant's wife had no right to turn as she did, without signalling her intention so to do and without first looking to see whether in so doing she would collide

with others properly using the highway, and assuring herself that she would not. This, section 1012, of the Vehicle Code of May 1, 1929, P. L. 905, 979, expressly requires. She could readily have ascertained whether or not her movement might result in injury to plaintiff, who was traveling in the same direction as she was. The merest glance would have told her this. 'Admittedly, she neither signalled nor looked, but, without doing either, turned suddenly in front of plaintiff's car. This was negligence, statutorily determined to be so, and caused all the trouble (Zandras v. Moffett, 286 Pa. 477); indeed such a turn would have been negligent even had she looked and seen plaintiff's car."

The charge of the court was as favorable as defendant had a right to expect, and the verdict is fully supported by the evidence.

The assignments of error are overruled and judgment affirmed.