## Carson v. City of Philadelphia

*G. A. Wilderman* and *Nochem S. Winnet*, for plaintiff.

*Joseph Sharfsin,* city solicitor, and *Samuel Feldman*, assistant city solicitor, for defendant.

GLASS, J., March 13, 1936.—This is a suit by the plaintiff, David C. Carson, formerly a magistrate's clerk in the office of former Magistrate Norma B. Carson, to recover from the defendant, the City of Philadelphia, the sum of $463.56, together with interest, which represents the amount deducted from his salary during the years 1932 and 1933.

The case was tried by a judge and a jury, who rendered a verdict for the plaintiff in the sum of $22.56, which amount the defendant agreed the plaintiff was entitled to receive. The plaintiff filed motions for a new trial and for judgment in his favor n. o. v. The motion for a new trial apparently was abandoned, so that we have before us for determination only the motion for judgment n. o. v.

In the brief filed by the plaintiff in support of the motion, there are two questions involved: (1) Can the salary of a public official whose office and the amount of compensation are fixed by statute be reduced by an ordinance of council?; (2) is there any testimony to show a waiver by the plaintiff of his right to receive the full amount of salary provided by the legislature?

The facts of the case were not disputed. From the pleadings and the testimony, it appeared that the plaintiff was appointed a magistrate's clerk on February 1, 1932, by the then Magistrate Norma B. Carson; that he continued as said clerk from that time until the end of the year 1933. During that time his salary was paid to and received by him semimonthly. Before receiving his salary, he, together with the other clerks, had signed a power of attorney directed to the chief magistrate's clerk as an attorney-in-fact to collect from the city controller for him and the other clerks the respective amounts due them. The plaintiff signed a payroll which contained, inter alia, his name, his title, the period of time worked, the basic rate of pay, and the data from which was deducted the net amount of each semimonthly salary payable to him. Altogether he signed 22 payrolls in 1932 and 24 in 1933, each of which showed certain deductions made from his salary in accordance with the ordinance of council.

By reason of the city's financial condition during the years 1932 and 1933, the moneys available for the payment of salaries of magistrate's clerks were not sufficient to pay each clerk $1800 per annum, as provided in section 36 of the Act of May 10, 1927, P. L. 866. Accordingly, during the year 1932 10 percent was deducted from the

salary, and in 1933 a sum equivalent to above 16 percent was deducted, the amount payable being arrived at in this way: an exemption of $600 was allowed on the basic pay of $1800, and 10 percent was deducted from the $1200. At no time when he signed the payroll and received his salary did the plaintiff complain or protest about the deduction.

The trial judge submitted to the jury for their determination as a question of fact whether or not the plaintiff, by reason of his conduct in receiving and accepting his semimonthly salary and signing the payrolls on each occasion without complaint or protest, had waived any claim to additional salary during the period of his employment.

We will first direct our attention to the questions raised by the plaintiff in support of his motion. The plaintiff in his brief and upon oral argument contended that his salary, having been fixed by the legislature, could not be reduced by ordinance of city council, and in support of his contention quotes article III, sec. 13, of the Constitution of Pennsylvania, which reads: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." He maintains that by reason of this constitutional inhibition the council of the City of Philadelphia had no power to make the deductions. He argues that the salary of a public officer cannot be increased or diminished during the term of his election or appointment.

While it is generally true that it is against public policy for the legislature to increase or diminish the salary of public officials during their term of office, we must first determine whether this constitutional inhibition is applicable to the instant case. In doing so, we must determine: (1) whether an ordinance of council is a law, as contemplated by the Constitution; (2) whether the term applies to anyone who is removable by the appointing power at will, with or without cause; and (3) whether a magistrate's clerk is a public official.

It has been determined from time to time that the term "law", as used in the Constitution, refers to acts of the legislature and not to ordinances of municipalities.

In Baldwin v. City of Philadelphia, 99 Pa. 164, the court held that a municipal ordinance is not a "law" within the meaning of article III, sec. 13, of the Constitution of Pennsylvania, and that the councils of the city may, by the passage of such ordinance, increase the salary of a municipal officer during his term of office. Mr. Justice Paxson, in the course of his opinion, said, at page 170:

"We need not discuss the question whether the plaintiff is a public officer, as it is not necessarily involved in the case. The error into which the learned judge below inadvertently fell was in applying the above section of the constitution to this case. The language of that instrument is: 'No *law* shall . . . increase or diminish his salary,' etc. The word 'law' has a fixed and definite meaning. In its general sense it imports 'a rule of action'; in the particular sense in which we are now considering it, it means, 'a rule of civil conduct, prescribed by the supreme power in the state, commanding what is right, and prohibiting what is wrong.' Blackstone. A law is an emanation from the supreme power, and cannot originate elsewhere. It is a rule which every citizen of the state is bound to obey.

"The ordinance of councils by which the plaintiff's salary was increased is not a law, and therefore does not come within the constitutional prohibition. It is a mere local regulation for the city of Philadelphia. It has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law . . . There is nothing in the article, even by implication, that would justify us in extending the word 'law' to the ordinances of a city. Such an interpretation would not be expounding the constitution; it would be altering it."

As early as Commonwealth v. Bacon, 6 S. & R. 322 (1820), the court held that an ordinance of city councils reducing the salary of the mayor of the city after his term of office had commenced was valid. That case was followed with approval in Barker v. City of Pittsburgh, 4 Pa. 49, 51, wherein a joint resolution of Select and Common Councils of the City of Pittsburgh abrogating the salary of the collector of tolls at the expiration of the time for which he had been elected and given bond was held, in an action by the collector for the balance of the annual salary brought after the expiration of the term for which he had been elected, not to be unconstitutional, and the plaintiff to be without remedy. In a per curiam opinion it is stated:

"That there is no contract, express or implied, for the permanence of a salary, is shown by the constitutional provision for the permanence of the salaries of the governor and judges, as exceptions. That there is a strong moral obligation, independent of constitutional provisions, is not to be disputed; but a moral obligation, however sacred, is not a ground for the enforcement of it as a legal right, with which alone we have power to deal. The point, however, was decided in the Commonwealth v. Bacon, 6 Serg. & Rawle, 322, which is conclusive as a precedent; and the plaintiff is without remedy for what is certainly a hardship."

In Sefler v. Borough of McKees Rocks, 72 Pa. Superior Ct. 81, 84 (1919), the court held that article III, sec. 13, of the Constitution of Pennsylvania refers to the acts of the legislature, and the action of a borough in reducing the compensation of a tax collector by ordinance is not in violation of the Constitution. See also Retirement Board of Allegheny County v. McGovern et al., Commrs., 316 Pa. 161, 167.

The plaintiff was not appointed for a term. In that connection we refer to section 28 of the Magistrates' Act, above referred to, which provides as follows:

"There shall be a clerk for each court held by a magistrate, each magistrate being authorized to appoint a clerk to serve in his own court. Appointments of clerks shall be during good behavior. The duties of each clerk shall be such as shall from time to time be prescribed for him by the magistrate in whose court he is employed, and as prescribed by administrative rule or rules to be established by the board of magistrates, with the approval of the chief city magistrate."

Section 34 thereof provides: "Each magistrate may remove the clerk employed in his own court."

In Somers v. State, 5 S. D. 321, 325, it is said:

"The word 'term', when used in reference to the tenure of office, means, ordinarily, a fixed and definite term, and does not apply to appointive offices, held at the pleasure of the appointing power."

In Somers v. State, supra, the court held that a deputy or assistant superintendent of public instruction who was appointed had no fixed term of office, but held at the pleasure of the appointing power, and that the provision of the constitution which prohibits the legislature from increasing or diminishing the compensation "of any public officer" "during his term of office" does not apply to such deputy or assistant so appointed. The court held that under the law the plaintiff had no term.

In State, ex rel., v. Johnson, Comptroller, 123 Mo. 43, it was held that a city officer appointed by the council and subject to removal by it at pleasure is not an officer within the meaning of a constitutional provision prohibiting the increase of salary of an officer during his term of office.

It is therefore obvious that the provision of the constitution as to term of office applies only to public officers who have a fixed tenure of office.

We next consider whether the plaintiff, a magistrate's clerk, was a public officer within the meaning of article III, sec. 13, of the Constitution of this State. In Mechem

on Law of Public Offices and Officers, page 5, sec. 4, there is the statement that what "distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public;—that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer."

There is a long line of decisions in this State treating this subject matter. In Commonwealth v. Evans, 74 Pa. 124, 139, Sharswood, J., said:

". . . all persons who, by authority of law, are intrusted with the receipt of public moneys, through whose hands money due to the public, or belonging to it, passes on its way to the public treasury, must be so considered [public officers] by whatever name or title they may be designated in the law authorizing their appointment, and whether the service be special or general, transient or permanent."

This principle is followed in Houseman et al. v. Commonwealth ex rel., 100 Pa. 222 (1882).

In Richie v. Philadelphia, 225 Pa. 511, 515, the court used this language:

"In every case in which the question arises whether the holder of an office is to be regarded as a public officer within the meaning of the constitution, that question must be determined by a consideration of the nature of the service to be performed by the incumbent and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one." See also Dewey v. Luzerne County, 74 Pa. Superior Ct. 300.

In Foyle et al. v. Commonwealth et al., 101 Pa. Superior Ct. 412, 416, 417, Judge Gawthrop said:

"There is a well recognized and definite distinction between an office and an employment, although it is not always easy to determine whether a person is an employee or an officer. The general rule is that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of these elements: 22 R. C. L. Sec. 12, p. 381. In Re Op. of Judges, 3 Me. 481, it is stated: 'There is a manifest difference between an office and an employment under the government. We apprehend that the term "office" implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and, in its effects, it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An employment, merely, has none of these distinguishing features.' See also cases cited in 20 C. J., p. 1244, note 72 (b). The most important characteristic which distinguishes an office from an employment or contract, is that the creation and conferring of an office involve a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public. Unless the powers conferred are of this nature, the individual is not a public officer: State v. Jennings, 57 Ohio St. 415, 424; 49 N. E. 404."

This case is cited with approval in Kosek v. Wilkes-Barre Township School Dist. 110 Pa. Superior Ct. 295, 298, 299, 300, 301.

In Bowman's Appeal, 111 Pa. Superior Ct. 383, 385, 386, Trexler, P. J., said:

"The standard fixed by numerous cases is that an officer to come within the constitutional prohibition of the above section is such as is chosen for a definite term, whose duties are for the benefit of the public for a stipulated consideration."

In Wiest v. Northumberland County et al., 115 Pa. Superior Ct. 577 (1935), it was held that the solicitor appointed to the county controller in counties of the fifth class is not a public officer within the meaning of article III, sec. 13, of the Constitution. Trexler, P. J., said, at page 578:

"Whether an officer is a "public officer" within the intendment of the constitutional prohibition depends upon the manner of his selection, the duties imposed, and the powers conferred upon him'. Commonwealth v. Moffitt, 238 Pa. 255, 86 A. 75. Where the duties of the office are to be exercised for the benefit of the public for a stipulated compensation to be paid by the public, where the term if [is] defined and the tenure certain, and where the powers, duties, and emoluments become vested in a successor when the office becomes vacant, it can confidently be affirmed that the occupant of the place is a public officer within the Constitution: Appeal of Tucker, 271 Pa. 462, 144 A. 626. The decisions upon this subject are collated in PS Constitution, Art. 3, Sec. 13, and it will serve no good purpose to refer to the cases therein cited seriatim."

And in the very recent case of Finley v. McNair et al., 317 Pa. 278, Mr. Justice Linn reaffirmed the principle laid down in Richie v. Philadelphia, supra, p. 515, when he said at page 281:

"In determining whether a position is an office or an employment, it is generally said that the 'question must be determined by a consideration of the nature of the

service to be performed by the incumbent, and of the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one' ".

He further said:

"Other elements in the problem are whether the duties are designated by statute, whether the incumbent serves for a fixed period, acts under oath, gives a bond, and the source or character of the compensation received (see foot-note)."

Applying that test to the instant case, we must conclude that the plaintiff did not hold public office, and that he was not a public officer. His duties were not defined by statute, but were only such as were prescribed for him by the magistrate in whose court he was employed, and as prescribed by administrative rule or rules established by the board of magistrates. He was not appointed for a definite period, but could be removed by the magistrate who appointed him. The duties imposed upon him were not of such a grave and important character as to involve in their proper performance any functions of government.

As to the question of waiver, the plaintiff contends that he neither waived any of his rights, nor was he estopped to assert them. In connection therewith it is necessary to review the testimony insofar as it relates thereto. On December 31, 1931, the council passed an ordinance for the adoption of a financial program for the City of Philadelphia for the year 1932 and making appropriations to carry such program into effect, the management of the entire fiscal affairs of the City and County of Philadelphia being placed in the hands of city council by the City Charter Act of June 25, 1919, P. L. 581, providing for the amount and character of the expenditures to be made by the various departments, boards, commissions, trusts, committees or other agencies of the City of Philadelphia

during the said year 1932, apportioned and appropriated, inter alia, as follows: "Board of Magistrates. A-25. Personal services: regular employees, as listed . . . . $177,300": See Ordinances and City Solicitors Opinions, 1931, p. 487; whereas the personal service items alone total $196,900, and the other items, including rent of offices, etc., total $36,180. It is therefore apparent that there was not sufficient money appropriated to pay in full the salaries of either the magistrates or the clerks. Of this the plaintiff certainly must have had knowledge when he was appointed as a clerk on February 1, 1932. He must have known that deductions from the salaries of the employes of the city had been made prior to the time when he began his employment. Yet, with full knowledge of the financial condition of the city, and notwithstanding the fact that other employes of the city were not being paid their salaries in full, he nevertheless entered upon the duties of his employment. He, together with the other magistrates' clerks, signed a power of attorney authorizing and empowering the chief magistrate's clerk to collect from the city controller the amount stated opposite their names on the payroll, and to pay to the board of pensions the sum due thereto set forth therein. The payrolls had the following notations at the head of each column: (1) Name, address of employe; (2) appointment, title; (3) time worked; (4) basic rate of pay; (5) semimonthly rate; (6) deductions; (7) amount available; (8) pension funds; (9) amount payable; (10) "We, the undersigned, hereby authorize and empower————————to collect from the city controller the amount stated opposite our names on this payroll and to pay into the board of pensions the sum due thereto as set forth herein"; (11) date of new appointment, severance from service, change of salary or other change of status.

The signature of the plaintiff, together with those of the other magistrates' clerks, appears on said payrolls. The plaintiff received his salary semimonthly, and signed such payroll whenever he received his pay. He signed 22

payrolls in the year 1932 and 24 in the year 1933. At no time did he protest that the salary he received was less than the sum to which he was entitled; and at no time did he give any notice to the city that he was not fully content to coöperate with the city and with the other magistrates' clerks, as well as with all the other employes of the city, in order that the personnel of the various bureaus and departments might be maintained and the administration of the city's affairs continue to function despite its depleted finances.

Those were the facts which the jury had before them and from which they determined as a fact that the plaintiff had waived his rights to the sums deducted, and they denied him a recovery for the same. In view of the verdict, upon the motion for judgment n. o. v., the evidence and inferences deducible therefrom favorable to the city must be taken as true, and those unfavorable, depending solely on the testimony, must be rejected: Magri v. McCurdy, 117 Pa. Superior Ct. 32; Ford v. Reinoehl, 120 Pa. Superior Ct. 285, 289. The testimony on this motion should not only be read in the light most advantageous to the party in whose favor the verdict was rendered, in this case the city, all conflicts therein being resolved in its favor, but it must be given the benefit of every fact pertaining to the issues involved which may reasonably be deduced from the evidence: Hunter v. Pope, 289 Pa. 560, 562; Adams v. Gardiner, 306 Pa. 576; Muehlhof v. Reading Co., 309 Pa. 17, 19; Christ v. Hill Metal & Roofing Co., 314 Pa. 375; Lincoln v. Christian, 94 Pa. Superior Ct. 145, 150; Ford v. Reinoehl, supra.

The plaintiff contends that he has neither waived any of his rights nor was estopped to assert them. With that conclusion we cannot agree:

"According to the generally accepted definition a waiver is the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some

advantage which he might at his option have demanded and insisted on": 27 R. C. L. 904, par. 2.

"A waiver must be clearly proved . . . by express declaration or agreement, or by acts and conduct manifesting an intent and purpose not to claim the supposed advantage, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive": 27 R. C. L. 910, par. 6.

"Whether there has been a waiver is generally a question of fact, and the sufficiency of the evidence relating thereto is for the jury. . . . Where, however, the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law": 27 R. C. L. 912, par. 7.

The plaintiff argues that there could not have been a waiver in this case because it is against public policy for a public officer to waive his salary. We do not agree with that conclusion insofar as it affects the instant case. In McConaghy, Admx., v. Philadelphia, 302 Pa. 142 (1931), the City of Philadelphia had failed to take the necessary action to put the provisions of the Act of May 16, 1923, P. L. 235, providing for the classification of its firemen and limiting their hours of employment, into effect. In a suit to recover additional compensation, the court held that the failure of the city to make provision did not render it liable to a fireman for compensation for work in excess of the requirements of the act, where it appeared that the fireman continued after the passage of the act to discharge his regular hours as he had done prior to the act and received his regular pay as fixed by ordinance then in force, and that he had not expressed dissatisfaction for the sum allowed him, and that he had made no demand on the city for either increased pay or decreased working hours before instituting suit against the city.

In De Boest v. Gambell, 35 Ore. 368, the court said:

"Notwithstanding the fact that the resolution of the board and the plaintiff's agreement to accept the reduced salary were void, he clearly had a right to release the city

from any claim for his salary over and above the stipulated amount; and when at the end of each month he accepted the reduced salary as full compensation for his services for the preceding month, in pursuance of his agreement, it was, in our opinion, substantially the same as if he had made a donation to the city of the difference between his agreed and the statutory salary. . . . Where a public officer enters into an agreement with the board or person by whom he is employed or appointed to accept an office and discharge the duties thereof for a less compensation than that provided by law, and such an agreement has been fully executed and performed, although invalid, as against public policy, at its inception, it is, after having been so executed, in our opinion, binding in law, as it always was in morals. . . . When the law fixes the salary of an office, the incumbent is entitled to it, and no executory agreement which he may make will prevent him from receiving it, if he so desires. But, where the salary has been earned, no principle of public policy is violated by his voluntary acceptance, in lieu thereof, of an amount less than that provided by the statute. And his assent to do so may be inferred from his conduct, as in the *Hobbs* and *O'Hara Cases*, or may be the result of an express agreement, as in the case in hand. In either event, the result is the same."

In Hobbs v. The City of Yonkers, 102 N. Y. 13, 18, 5 N. E. 778, the court said:

"Conceding that the agreement was illegal and invalid, the plaintiff has a perfect right to release the city from all claims he had for services beyond the amount which he had agreed to accept. Had he executed an instrument to that effect purporting to be in full of all demands on account of his fees, no serious question could arise that it would be effectual for such a purpose and that he would preclude himself from asserting any further right to compensation. He has substantially and really by his conduct in the transaction of the business done all this, and by his repeated settlements, in which he has accepted the

compensation agreed upon, virtually discharged the defendant from any further liability."

In O'Hara v. The Town of Park River, 1 N. D. 279, 47 N. W. 380, the court said:

"It is true that a party cannot before election to office bind himself by an agreement to receive less salary, if elected, for the performance of the duties of such office than the law fixes. . . . But after the performance of the services, the party may receive less compensation therefor than the legal salary if he chooses so to do."

In City of Lexington v. Rennick et al., 105 Ky. 779, the court held that the municipal officers, by accepting their salaries as reduced by the ordinances until they were discharged, without objecting to their reduction, estopped themselves to deny the validity of the reduction.

In Alexander v. Woodford Spring Lake Fishing Co., 90 Ky. 215, 222, 14 S. W. 80, the court said:

"When a man, with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of a transaction, or acts in a manner inconsistent with its repudiation . . . the transaction, although originally impeachable, becomes unimpeachable in equity."

In Rau v. The City of Little Rock, 34 Ark. 303, the court said:

". . . the salary as fixed by the ordinance, and afterwards by the resolution, was paid the appellant monthly, and he, with full knowledge of the facts, accepted the same, without, it would seem, any protest or objection, as in full satisfaction and discharge of his demand, and such was the operation and effect of the acceptance. *2 Pars. on Con., 618; 2 Chit. on Con., 1101, 1127; Birt. on Con., sec. 417*".

Clearly, if there can be waiver, as appears from the authorities, by public officers under certain conditions, certainly there can be a waiver by those who are not public officers, particularly in times of great financial stress

and public emergency such as existed in the years 1932 and 1933. It surely would not have been for the public good to have paid the salaries of employes, or even of public officers, in full, and at the same time to have curtailed the essential functions of the municipal government, particularly those relating to the health, safety and even the very lives of the community. To have done so would have been not for the public good, but against it. Public policy is public good.

In Goodyear v. Brown, 155 Pa. 514, 518, 519, the court said:

"In a general way it may be said that public policy means the public good. Anything that tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy."

". . . what is against the public good is against public policy".

We cannot overlook the fact, on the contrary, we take judicial knowledge, that in 1932 and 1933 the City of Philadelphia was under a great financial stress. There was not sufficient money to pay employes in the year 1932, and there was no prospect of doing so in the year 1933; and we find that prior to the passage of the ordinance for the adoption of the financial program of the City of Philadelphia for the year 1933 on January 16th of that year, the council had, on August 26, 1932, adopted a resolution requesting all departments, offices, boards, commissions, trusts, committees, or other agencies to take steps immediately to adjust the personnel of salary or wage items, pointing out the condition of the city's revenues then existing. What might not be done under ordinary conditions might be done under extraordinary conditions, in times of great stress and in emergencies.

It is well in this connection to note and quote from the opinion of Chief Justice Hughes in the case of Home B.

& L. Assn. v. Blaisdell et al., 290 U. S. 398, involving the validity of the Minnesota mortgage moratorium law. In speaking of emergency, he said at page 426:

"While emergency does not create power, emergency may furnish the occasion for the exercise of power. 'Although an emergency may not call into life a power which has never lived, nevertheless emergency may afford a reason for the exertion of a living power already enjoyed' *Wilson v. New*, 243 U. S. 332, 348."

And at page 440 he said:

"Whatever doubt there may have been that the protective power of the State, its police power, may be exercised—without violating the true intent of the provision of the Federal Constitution—in directly preventing the immediate and literal enforcement of contractual obligations, by a temporary and conditional restraint, where vital public interests would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a period of scarcity of housing. *Block v. Hirsh*, 256 U. S. 135; *Marcus Brown Holding Co. v. Feldman*, 256 U. S. 170; *Edgar A. Levy Leasing Co. v. Siegel*, 258 U. S. 242."

Continuing, he said at page 441:

"In these cases of leases, it will be observed that the relief afforded was temporary and conditional; that it was sustained because of the emergency due to scarcity of housing; and that provision was made for reasonable compensation to the landlord during the period he was prevented from regaining possession."

At page 442 is further said:

"It is manifest from this review of our decisions that there has been a growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. . . . Where, in earlier days, it was thought that only the concerns of individuals or of classes were involved, and that those of the State itself were touched only re-

motely, it has later been found that the fundamental interests of the State are directly affected; and that the question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends."

It can be said with propriety that the city council endeavored to safeguard the economic structure of the city, and that it was concerned with the welfare of the city and its citizens. It cannot be said that the council attempted or endeavored to reduce or fix salaries. All that it endeavored to do was to adjust the financial program of the city so as to tide it over its financial difficulties. What it did was temporary in character, because we know that beginning with the year 1934 and continuing to this day the salaries of all the employes affected by the deduction have been restored to their original base.

Counsel for the City of Philadelphia maintains that the plaintiff was not entitled to recover the amount of the salary deducted because of the provision in article XVII, sec. 10, of the City Charter Act, supra, which says:

". . . no payment may be enforced . . . for services rendered to the city or to any such department . . . unless there shall have been a previous appropriation by the council to pay for such services."

While it is unnecessary to pass upon this particular point, we do, however, call attention to article XVII, sec. 10, of the City Charter Act, supra, which provides as follows, at page 609:

"No liability shall be enforceable against the city, by any action at law in equity or otherwise, upon any contract . . . and no payment may be enforced by any such action for services rendered to the city or to any such department . . . unless there shall have been a previous appropriation by the council to pay for such services."

And we call attention also to the case of Leary v. Philadelphia et al., 314 Pa. 458, wherein Mr. Justice Simpson, speaking for the court, after referring to that provision

of the charter act and other provisions, quoted the late Judge Thayer in Gamble v. Philadelphia, 14 Phila. 223:

"In order to make the city liable, not only must there be an appropriation, but a sufficient appropriation. Its responsibility cannot be made to extend beyond the amount actually appropriated."

From whatever viewpoint we consider this case, we must conclude that the verdict of the jury was a proper one, and that the plaintiff's motion for judgment n. o. v. for the full amount of his claim must be dismissed.